UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:17-cv-00198-JHM

FACTORY MUTUAL INSURANCE  PLAINTIFF
COMPANY, as subrogee of General Electric
Company,

v.

DERBY INDUSTRIES, LLC  DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a motion for partial dismissal by defendant Derby Industries, LLC ("Derby"). (DN 19.) Also before the Court are motions by plaintiff Factory Mutual Insurance Company ("Factory Mutual") to exclude all documents outside the pleadings (DN 28) and to set an initial case management conference. (DN 37.) Fully briefed, these matters are ripe for decision.

## I. BACKGROUND

The present dispute stems from a large fire that occurred at General Electric Company's ("GE") Appliance Park, a 1,000 acre industrial manufacturing campus in Louisville, Kentucky. (Pl.'s Compl. [DN 1] ¶ 7.) Appliance Park had six main buildings at the time of the fire, one of which was known as "AP6." On April 3, 2015, a fire originated in AP6 and quickly spread, completely destroying the 650,000 square foot warehouse section of AP6 and its contents. (*Id*. ¶ 17.) The fire also significantly damaged the 100,000 square foot office section of AP6 and its contents, and smoke caused extensive soot damage to the adjacent building and its contents. (*Id*. ¶¶ 17–18.) Additionally, GE claims that the fire damage disrupted manufacturing and business operations throughout Appliance Park and the United States. (*Id*. ¶ 19.)

At the time of the fire, GE was leasing approximately 450,000 square feet of floor space in AP6 to Derby pursuant to a written lease agreement ("Lease Agreement"). GE exclusively used and occupied the 100,000 square feet of office space in AP6, while the remaining floor space was used and occupied in various ways by GE and its subcontractors/tenants. GE and Derby were also parties to a Supplier Distribution Center Agreement ("SDC Agreement"). Pursuant to this agreement, Derby used its leased floor space in AP6 as a supplier distribution center for palletized bulk and high rack storage. (*Id*. ¶ 12.) The complaint alleges that the majority of the palletized bulk stored by Derby was comprised of flammable, plastic parts stacked up to twenty-six feet in the air. (*Id*. ¶ 17.) The complaint also claims that the rapid spread of fire across AP6 was the direct and proximate result of the "enormous fuel load" created by Derby's bulk storage and high rack storage practices. (*Id*.) Factory Mutual, which at all relevant times provided property and business interruption insurance to GE, alleges that damages from the fire total approximately $140 million. (*Id*. ¶¶ 8, 20.) Factory Mutual reimbursed GE for damages in the amount of $134 million, as the policy imposed a $6 million deductible on GE. (*Id*. ¶ 28.)

Factory Mutual, as subrogee of GE, filed this complaint against Derby on April 3, 2017, alleging negligence/negligence per se, breach of contract, and contractual indemnification and seeking $140 million in damages. (DN 1.) Derby has filed a motion to partially dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), as Factory Mutual has failed to state a claim for the $6 million deductible paid by GE and the $68.5 million cost associated with rebuilding AP6. (DN 19.) Factory Mutual has responded by seeking to exclude the documents Derby cites to in support of their motion, as they are matters outside the pleadings. (DN 28.) Alternatively, Factory Mutual argues that the motion should be converted into one for summary judgment, and

that under either standard, Derby's motion should be denied. (*Id.*) Finally, Factory Mutual has also filed a motion to set an initial case management conference. (DN 37.)

## II. STANDARD OF REVIEW

The first issue before the court is the proper standard to apply to Derby's motion for partial dismissal. Generally, under Rule 12(b)(6), the court must assess the facial sufficiency of the complaint without resorting to matters outside the pleadings. *See Wysocki v. Int'l Bus. Mack Corp.*, 607 F.3d 1102, 1004 (6th Cir. 2010). If "matters outside the pleadings are presented to and not excluded by the court" when deciding a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

In support of its motion, Derby attached a document called "Agreement Relating to AP6 Lease and SDC" ("Termination Agreement") not contained in the pleadings. (DN 19-1, at 15.) Derby's motion also references the contents of a "Confidential Settlement Agreement" ("CSA") which was not attached to the pleadings or the present motion but has since been filed under seal with the Court. (DN 43.) Factory Mutual urges the court to strike and exclude the attached document and reference to the CSA as unauthenticated documents outside the pleadings and consider the motion under Rule 12(b)(6). Alternatively, Factory Mutual argues that the motion should be converted to a motion for summary judgment under Rule 56.

The Court will convert Derby's motion into one for summary judgment. Factory Mutual's contention that the Termination Agreement and CSA are unauthenticated and therefore should be stricken is rendered moot by Factory Mutual's filing of the same documents, along with affidavits for authentication purposes, as exhibits to its response to Derby's motion. (DN 28-1, 28-2.) Further, Factory Mutual has also attached and relied upon a document entitled "Assignment of Claims Agreement" ("Assignment Agreement") in its response to Derby's

motion. This Assignment Agreement is not contained in the pleadings, and thus the court must convert Derby's motion to one for summary judgment in order to consider this document in Factory Mutual's response. As both parties have attached and relied upon documents not contained in the pleadings and had an opportunity to respond to the documents submitted by the opposing parties, the court finds it appropriate to convert Derby's motion into a motion for summary judgment. Therefore, Factory Mutual's motion to exclude those documents included by Derby in its motion (DN 28) is **DENIED**.

A party moving for summary judgment must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Additionally, the Court must draw all factual inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue for trial exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III. DISCUSSION

Derby's motion argues that Factory Mutual may not recover (1) the $6 million paid by GE as a deductible and (2) damages for the rebuild value of AP6, estimated by Factory Mutual to be $68.5 million. The Court will address each in turn.

### A. RECOVERY OF DEDUCTIBLE

While GE's total loss from the fire was $140 million, it was required to pay $6 million towards the loss as a deductible. (Assignment Agreement [DN 28-1] ¶ E.) However, Factory Mutual now seeks to recover the entire value of GE's $140 million loss from Derby, including

4

the $6 million deductible that Factory Mutual never paid to GE. Derby argues that any claim for this $6 million belongs to GE, not Factory Mutual, as GE is the party that actually lost the $6 million. It also argues that Factory Mutual cannot assert this claim on GE's behalf, as GE agreed to not seek any recovery from Derby for any direct claims arising from the fire in AP6. (*See* CSA [DN 43] ¶ 6.) Factory Mutual opposes the motion by arguing that GE agreed to assign its claim for the $6 million deductible to Factory Mutual, making it the proper party to bring this claim. (*See* Assignment Agreement [DN 28-1] ¶ 2.) It also argues that the CSA did not limit GE from pursuing any claims against Derby; instead, it only specified that any claims against Derby would only be compensable with funds from a separate insurance policy, protecting Derby's individual assets. In its reply, Derby argues that GE's assignment of its claim to Factory Mutual is invalid, as it was executed on June 28, 2017, during the pendency of Derby's present motion and outside the two-year statute of limitations for property damage claims.

To begin, Factory Mutual cannot maintain a claim for the $6 million deductible as the subrogee of GE, as it never actually paid that amount. "The requisites for subrogation are usually described as (1) payment by one of a debt of another . . ." *Wine v. Globe American Cas. Co.*, 917 S.W.2d 558, 561 (Ky. 1996) (quoting *Bryan v. Henderson Elec. Co.*, 566 S.W.2d 823, 825 (Ky. Ct. App. 1978)). Factory Mutual did not pay GE the full $140 million that corresponded with its loss, but rather only $134 million. Therefore, its posture as subrogee of GE in this case precludes it from recovering the $6 million deductible paid by GE, as that claim only belongs to GE.

However, GE has assigned its personal claim for this $6 million against Debry to Factory Mutual. (Assignment Agreement [DN 28-1] ¶ 2.) "Where the cause of action is assignable, and the entire cause has been assigned, clearly the assignee has become the owner of the cause and

he is the real party in interest." *Louisville & N. R. Co. v. Mack Mfg. Corp.*, 269 S.W.2d 707, 709 (Ky. 1954) (citations omitted). The issue, however, is that Factory Mutual has not alleged that it is the real party in interest in its complaint, and understandably so, since the assignment did not take place until over two months after this action was initiated. Instead, Factory Mutual has exclusively pursued claims against Derby as the subrogee of GE, a theory that does not permit it to recover the deductible. (*See* Pl.'s Compl. [DN 1] ¶¶ 1–2, 22, 28, 39, 43.) The assignment of GE's claim to Factory Mutual does not resolve this pleading deficiency, as Factory Mutual can only recover as the real party in interest if it has brought a claim in that capacity. *See* Fed. R. Civ. P. 8(a)(2) (complaint must contain "a short and plain statement of the claim showing that the *pleader* is entitled to relief") (emphasis added). If Factory Mutual wishes to pursue claims against Derby for the $6 million deductible as the real party in interest, it should file a proper motion for leave to amend its complaint, which should include a proposed amended complaint that alleges that theory of recovery.[1] But Factory Mutual has failed to show that it would be entitled to recover the deductible as GE's subrogee, the only theory of recovery that it has alleged. As such, the Court will **GRANT** the motion by Derby and dismiss all claims by Factory Mutual, as subrogee of GE, for the $6 million deductible.

### B. RECOVERY OF THE COST TO REBUILD AP6

Next, Derby argues that Factory Mutual may not bring any claims seeking to recover the cost to rebuild AP6, which has been valued at $68.5 million. It argues that GE relieved Derby of any duty to rebuild AP6 through the Termination Agreement that the parties agreed to on April 10, 2015, one week after the fire. (Termination Agreement [DN 19-1] ¶ 1(b).) Factory Mutual argues that, while the Termination Agreement states that there is no duty to rebuild AP6,

---

[1] If Factory Mutual does seek leave to amend its complaint, Derby may raise the statute of limitations in opposition at that time.

the same agreement calls for Derby to indemnify GE for certain obligations, including the cost of rebuilding AP6. (*Id.* ¶ 2.) It also argues that, even if Derby was not obligated to rebuild AP6, the cost of rebuilding the structure is the proper measure of damages in a case of property damage like this one.

The Termination Agreement reads, in relevant part, as follows:

> GE and Derby hereby agree as follows:
>
> 1. As a result of the destruction of AP6 on April 3, 2015, (a) the continuing rent, utility, additional rent, charge, and cost payment obligations under the AP6 Lease, the lease term under the AP6 Lease, Derby's operation under the SDC, and the SDC Agreement are all terminated effective as of April 3, 2015 and (b) there is no duty to repair or rebuild AP6.
>
> 2. The obligations of either party to indemnify the other party arising under both the AP6 Lease and the SDC Agreement shall survive the termination of the AP6 Lease and the SDC Agreement with respect to activities or events that occurred during the term of both.

(*Id.* ¶¶ 1–2.) Thus, the issue before the Court is whether this language relieves Derby of any liability towards GE that Factory Mutual, as GE's subrogee, could recover in the present action.

In interpreting the agreement, the Court's review

> must begin with an examination of the plain language of the instrument. In the absence of ambiguity, a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence. A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations.
>
> When no ambiguity exists in the contract, we look only as far as the four corners of the document to determine the parties' intentions. [But i]f the language is ambiguous, the court's primary objective is to effectuate the intentions of the parties.

7

*Ky. Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 694–95 (Ky. 2016) (citations and quotations omitted). *See also Abell v. Sky Bridge Resources, LLC* , --- F. App'x ---, 2017 WL 4711917, at *5 (6th Cir. Oct. 19, 2017) (applying Kentucky law) (considering extrinsic evidence only after finding employment agreement was "silent or ambiguous" on whether "hours worked" included an employee's travel time). Derby argues that the contract unambiguously relieves it of any duty to pay the cost to rebuild AP6, stating, "[i]f there is no duty to repair or rebuild, then there is no duty to provide the monetary value of same either." (Def.'s Reply [DN 36] at 5.) Factory Mutual counters this by noting that the contract lacks words such as "waiver" or "release," which would typically be associated with a complete absolution of liability. With these words lacking, Factory Mutual argues that the contract only relieves Derby of the duty to construct a new building to replace AP6, not the duty to compensate GE for its loss. Further, it argues that paragraph 2 explicitly states that Derby is not released from its preexisting duties to indemnify GE under the Lease and SDC Agreements.

Upon examination of the document, the Court concludes that there is no ambiguity in the Termination Agreement, as the plain language of the contract does not release Derby from any duty to reimburse GE for its loss. Paragraph 2 contains the key language that requires this conclusion, as it explicitly contemplates Derby compensating GE through two specific indemnification clauses found in the Lease Agreement and the SDC Agreement. (*See* Lease Agreement [DN 1-1] ¶ 13) ("Lessee [Derby] further agrees to indemnify and hold Lessor [GE] harmless from all . . . expenses . . . resulting from . . . damage to any property caused by or resulting from any act or omission of Lessee . . ."); (SDC Agreement [DN 1-2] ¶ 16) ("The performing party shall defend, indemnify and hold harmless the other party . . . against any and all claims which may result in any way from any act or omission from the performing party . . .")

The Court must construe the contract "as a whole, giving effect to all parts and every word in it if possible." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384–85 (Ky. Ct. App. 2002) (quoting *City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986)). If the Court were to conclude that the release of Derby's duty to repair or rebuild AP6 necessarily included a release of the duty to reimburse GE for its loss of AP6, this would undermine the contract's statement that the indemnification clauses remain in effect, as these indemnification clauses contemplate Derby reimbursing GE. Thus, the Court concludes that the Termination Agreement does not release Derby from any potential duty to reimburse GE for the loss of AP, as the contract specifically acknowledges the continuing viability of Derby's duty to indemnify GE under the Lease and SDC Agreements.

As for Derby's motion to preclude recovery of the cost to rebuild AP6, Factory Mutual has brought a contractual indemnification claim against Derby that references the indemnification clause in the Lease Agreement. (Pl.'s Compl. [DN 1] ¶¶ 40–43.) Thus, Factory Mutual has stated a claim under which it may recover the $68.5 million associated with rebuilding AP6. Further, the Termination Agreement's release of Derby from any duty to rebuild or repair AP6 does not entitle Derby to summary judgment on this claim, as the indemnification clauses remain in effect under the Termination Agreement. Therefore, Derby's motion to preclude Factory Mutual from seeking the cost to rebuild AP6 is **DENIED**.

### IV. MOTION TO SET INITIAL CASE MANAGEMENT CONFERENCE

Finally, Factory Mutual has moved to set an initial case management conference. (DN 37.) The motion is **GRANTED**. The Court will issue a separate order setting a scheduling conference.

## V. Conclusion

Therefore, for the reasons stated herein, **IT IS HEREBY ORDERED** that Derby's motion to dismiss (DN 19) is **GRANTED IN PART** and **DENIED IN PART**, and Factory Mutual's motion to exclude (DN 28) is **DENIED. IT IS FURTHER ORDERED** that Factory Mutual's motion to set an initial case management conference (DN 37) is **GRANTED**. The Court will set the conference by separate order.

Joseph H. McKinley, Jr., Chief Judge
United States District Court

March 19, 2018

cc: counsel of record